**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

HAROLD DONNEGAN,               )
                               )
Petitioner,                    )
                               )
vs.                            )        CAUSE NO. 3:09-CV-026
                               )
SUPERINTENDENT,                )
                               )
Respondent.                    )

## OPINION AND ORDER

This matter is before the Court on the: (1) Amended Petition
for Writ of Habeas Corpus (DE# 5), filed by Petitioner, Harold
Donnegan, a *pro se* prisoner, on February 23, 2009; and (2) Motion
to File Instanter, filed by Petitioner on October 2, 2009. For the
reasons set forth below, the Court: (1) **GRANTS** the petitioner's
motion for leave to file his traverse instanter (DE# 16); (2)
**DENIES** the amended habeas corpus petition (DE# 5); and (3) **DENIES**
a certificate of appealability.


BACKGROUND

In deciding this habeas petition, the court must presume the
facts set forth by the state courts are correct. 28 U.S.C.
§ 2254(e)(1). It is Donnegan's burden to rebut this presumption of
correctness with clear and convincing evidence. *Id.* Donnegan is
serving an aggregate 41-year sentence based on his 2003 convictions

1

in Tippecanoe County Superior Court for dealing in cocaine and possession of marijuana. *State v. Donnegan*, 79D02-0103-CF-43. On direct appeal, the Indiana Court of Appeals set forth the facts surrounding Donnegan's convictions as follows:

> Pursuant to an ongoing drug investigation, on the morning of March 27, 2001, Tippecanoe County Drug Task Force Officers took four bags of trash from the residence at 910 Eastwich Drive in Lafayette, where Donnegan and Angelia Hill were believed to be living. In the trash, officers found, among other things, marijuana seeds and residue, cocaine residue, and plastic baggie remnants. The next day, March 28, 2001, officers obtained a search warrant for the residence at 910 Eastwich Drive. Around 11:30 a.m. that morning, officers conducted surveillance of the residence and observed Donnegan in the backyard. When Donnegan left the residence in his car just minutes later, officers stopped and arrested him on an unrelated warrant. Officers searched Donnegan and found a crack pipe and 1.63 grams of cocaine in his pocket.
>
> Following Donnegan's arrest, officers searched the residence at 910 Eastwich Drive. During the search, officers found 48.97 grams of cocaine in multiple packages inside a "canister safe" underneath the kitchen sink, 2.97 grams of cocaine in a kitchen drawer, .85 grams of cocaine in a leather jacket, .06 grams of cocaine embedded in the carpet, a digital scale and baggies in a kitchen cabinet, marijuana on a counter in the kitchen, and marijuana seeds in an ashtray in the living room. Hill, who was present at the beginning of the search, was arrested. Hill later pled guilty to dealing cocaine as a Class A felony and was sentenced to thirty years, twenty of which were ordered to be executed. . . .
>
> At the jury trial in this case, Hill testified that the lease for 910 Eastwich Drive was in her name only but that Donnegan lived with her about half of the time and helped pay bills; the other half of the time Donnegan lived in Chicago. Hill also testified that Donnegan—whose drug network included at least three or four other individuals—brought large amounts of cocaine from Chicago, oftentimes via public transportation, to sell in Tippecanoe County and that she sold cocaine for Donnegan.

> Hill testified generally that cocaine was kept in the residence at 910 Eastwich Drive and that both she and Donnegan had access to it.

*Donnegan v. State*, 809 N.E.2d 966, 970-71 (Ind. App. Ct. 2004) (*Donnegan I*) (internal footnotes omitted). The jury found Donnegan guilty as charged. *Id.* at 971. The trial court entered judgment on Count I, possession of cocaine as a Class B felony; Count II, dealing in cocaine as a Class A felony; Count V, possession of marijuana as a Class A misdemeanor; and Count VI, possession of cocaine as a Class B felony. *Id.* At sentencing, the trial court identified multiple aggravating factors, including Donnegan's prior criminal history, and determined that these factors warranted an enhanced sentence. *Id.* The court sentenced Donnegan to a 40-year enhanced sentence on Count II, and a total term of 55 years. *Id.*

On direct appeal, Donnegan raised four arguments: (1) his convictions violated double jeopardy principles; (2) the prosecutor committed misconduct during closing arguments; (3) there was insufficient evidence to support his convictions; and (4) his sentence was unduly long under state law. (DE 10-4.) Finding a double jeopardy violation, the Indiana Court of Appeals vacated two of Donnegan's convictions, but affirmed in all other respects. *Donnegan*, 809 N.E.2d at 974-76.

On May 19, 2005, Donnegan filed a *pro se* petition for post-conviction relief, and later obtained counsel to represent him. *Donnegan v. State*, 889 N.E.2d 886, 890 (Ind. App. Ct. 2008)

(*Donnegan II*). In the post-conviction proceedings, Donnegan raised the following claims: (1) the prosecutor committed a *Brady* violation by failing to disclose that he had entered into an agreement with two witnesses in exchange for their testimony; and (2) his appellate counsel was ineffective in failing to raise an argument based on *Blakely v. Washington*, 542 U.S. 296 (2004), on appeal. Following an evidentiary hearing, the trial court denied post-conviction relief. *Donnegan II*, 889 N.E.2d at 891. The Indiana Court of Appeals affirmed. *Id.* at 900. Donnegan, through counsel, sought transfer to the Indiana Supreme Court, which was denied. (DE 10-13.)

On January 22, 2009, Donnegan filed a federal habeas corpus petition, which he amended on February 23, 2009. (DE 1, 5.) In the amended petition, Donnegan raises the following three claims: (1) the prosecutor committed a *Brady* violation by failing to disclose "deals of leniency" that he claims were made with two witnesses in exchange for their testimony at trial; (2) his appellate counsel was ineffective in failing to raise an argument based on *Blakely*; and (3) the prosecutor committed misconduct during closing arguments.

DISCUSSION

This petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").

4

*See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can only grant an application for habeas relief if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim---
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination   of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is "contrary to" federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court or if the state court reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application"

clause if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively unreasonable." *Id.*

Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). The exhaustion requirement is premised on concerns of comity; the state courts must be given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claims in one complete round of state review. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845. To satisfy this requirement, the petitioner must present the substance of his claim by "articulating both the operative facts and applicable law" that entitles him to relief. *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009).

The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits

of a claim when either: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state law procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Perruquet*, 390 F.3d at 514. When a habeas petitioner fails to fairly present his claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted. *Boerckel*, 526 U.S. at 853-54.

A habeas petitioner can overcome a procedural default by showing both cause for failing to properly exhaust a claim in state court and a resulting prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986).

A habeas petitioner may also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman*, 501 U.S. at 750. Under this narrow exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Before turning to Donnegan's claims, the court must address Donnegan's motion for leave to file his traverse approximately twelve days late. (DE 16.) He asserts that he could not meet the deadline set by the court due to the fact that the prison was on lockdown for several weeks, which disrupted the normal operations of the law library. In the interest of justice, this request will be granted.

### A.    Claim One

In claim one, Donnegan asserts that he was denied a fair trial because the state "withheld the fact that they made deals of leniency, unknown to Donnegan, with both Angelia Hill and Brittany Allen [Cox] in exchange for their testimony at Donnegan's trial." (DE 5 at 5; *see also* DE 16-3 at 7-13.) Donnegan argues that the prosecutor's actions violated his rights under the U.S. Constitution and the Indiana Constitution. (*Id.*)

To the extent Donnegan's claim is premised on the Indiana Constitution, it is not cognizable in this proceeding, since relief in a federal habeas corpus proceeding is only available for a violation of the U.S. Constitution or other federal law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

That leaves Donnegan's claim based on the U.S. Constitution. "When the government deliberately or inadvertently withholds evidence that is material and favorable to the defense, it violates the defendant's right to a fair trial, which is guaranteed by due

process." *Ben-Yisrayl v. Buss*, 540 F.3d 542, 552 (7th Cir. 2008) (citing *Brady v. Maryland*, 373 U.S. 83 (1963).) The government has a duty to disclose impeaching or exculpatory information, regardless of whether it is specifically requested by the defendant. *Id.* This includes information about an agreement, either express or tacit, between the prosecution and a state witness. *Wisehart v. Davis*, 408 F.3d 321, 324 (7th Cir. 2008). The Indiana Court of Appeals properly identified these governing principles in resolving Donnegan's *Brady* claim.[1] *Donnegan II*, 889 N.E.2d at 893-94.

Donnegan's *Brady* claim is premised on alleged deals the prosecutor made with Hill and Cox, both of whom testified at his trial. The record reveals that Hill, who has a child with Donnegan, was arrested on the same day as Donnegan after police searched the residence they were sharing at 910 Eastwich Drive in Lafayette. *Id.* at 889, 897. Hill entered into a plea agreement with the state on August 14, 2001. *Id.* at 894. In the agreement, Hill agreed to plead guilty to dealing cocaine and one other offense in exchange for dismissal of the remaining charges and a total executed sentence of 20 years in prison. *Id.* The plea agreement further provided that

---

[1] Although the court did not cite *Brady*, it cited state case law which in turn cited *Brady*. *See Donnegan II*, 889 N.E.2d at 893-94 (citing *Hyppolite v. State*, 774 N.E.2d 584 (Ind. App. Ct. 2002)). The state court need not cite to Supreme Court cases, or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

prior to sentencing, Hill was required to give a sworn, recorded statement disclosing her knowledge of any criminal activity by others, known as a "clean-up statement." *Id.* On September 11, 2001, Hill provided a clean-up statement in which she implicated Donnegan in extensive drug-dealing, stating that he would bring large of amounts of cocaine from Chicago to sell in Lafayette. *Id.* She provided other details, including the names of people involved in Donnegan's drug network and information about how the drugs were sold. *Id.*

At Donnegan's trial, Hill testified extensively regarding Donnegan's drug-dealing. *Id.* She was also questioned at length by defense counsel about her plea agreement and her efforts to obtain a modification of her sentence. *Id.* at 895. She acknowledged that she was aware a motion to modify her sentence would not be granted without approval from the prosecuting attorney *Id.* Defense counsel asked, "[Y]ou can't get out of jail unless the prosecutor agrees?" and Hill answered, "Right." *Id.* Hill denied, however, that she had any specific agreement with the prosecutor about modifying her sentence, stating that she "hope[d]" the "prosecutor [would] cut me some slack and modify my sentence" after she testified. *Id.*

Cox also testified at trial regarding Donnegan's drug-dealing, including testifying that she had arranged for Donnegan to sell crack cocaine to a friend in 2000. *Id.* She further testified that she pled guilty to armed robbery in May 2001 pursuant to a plea

agreement, which provided that she would serve 10 years in prison if she gave a clean-up statement. *Id.* She gave such a statement in June 2001 implicating Donnegan in drug activity. *Id.* On cross-examination, defense counsel questioned Cox about her efforts to obtain a modification of her sentence. *Id.* She acknowledged that her initial request was denied, and that she later learned a modification would not be granted without the agreement of the prosecuting attorney. *Id.* at 896. Defense counsel asked her, "So unless the prosecutor agrees, you've got to serve your entire sentence?" and Cox answered, "Correct." *Id.* She denied that she had made any specific agreement with the prosecutor for obtaining a modification of her sentence in exchange for her testimony. *Id.* On redirect, she testified that she met with the prosecutor for the first time the day prior to trial to go over her testimony, but stated that he did not make "any sort of promises" to get her to testify. *Id.* at 896-97. After Donnegan's trial, both Hill and Cox obtained modifications of their sentence. *Id.* at 897.

In the post-conviction proceedings, Donnegan submitted a letter from Hill claiming that she had lied about Donnegan's drug-dealing at trial, and that she had been "willing to say anything and do anything they wanted [her] to because they told [her] that if [she] did they would consider modifying [her] out." *Id.* at 890. She further stated that "minutes before [Donnegan's] trial, I was approached by the State and offered a plea agreement in exchange

for testimony against [Donnegan] wherein in so many words the prosecutors informed me that I would be modified which I was." *Id.* He also submitted a copy of a letter from the prosecutor to Cox a few months after the trial in which he stated that in light of her recent cooperation, he would advise the court that he had no objection to her petition for modification of her sentence. *Id* at 891. In light of this evidence, Donnegan claimed that the prosecutor had committed a *Brady* violation by failing to disclose that he had agreements with both Hill and Cox.

Hill and Cox both testified at Donnegan's post-conviction hearing. *Id.* Hill testified that she lied about Donnegan's drug-dealing at trial in return for her plea agreement. *Id.* at 897. She further testified that shortly before Donnegan's trial began, she spoke with the prosecutor and he told her in a "round about way" that she would receive a modification of her sentence if she testified against Donnegan. *Id.* On cross-examination, Hill admitted that she had entered into her plea agreement two years prior to Donnegan's trial. *Id.* Hill was also questioned about a letter she had written to the prosecutor after the trial, stating, "You told me that the next time I file for modification to write you a letter and explain why I feel that I should be modified." *Id.* at 897. She asked him to look over her motion for modification and "make your decision," and acknowledged that she knew there were "no guarantees." *Id.* at 897.

Cox, in turn, testified that she met with the prosecutor shortly before trial to go over her testimony but that he had "never like offered me a deal," although she spoke with him "briefly" about her desire to obtain a modification. *Id.* at 898. She believed that he might "put a good word in if I tried to modify." *Id.* Cox testified that she did not believe she had a specific agreement with the prosecutor to obtain a modification in exchange for her testimony. *Id.*

Based on this evidence, the Indiana Court of Appeals rejected Donnegan's *Brady* claim, concluding that there was no agreement between the state and the witnesses that needed to be disclosed, and thus no prosecutorial misconduct. *Id.* at 899-900. The state's rejection of Donnegan's *Brady* claim was premised on its factual determination that there was no agreement between the state and these witnesses. Evidence in the record supports the state court's determination, including Hill's inconsistent testimony; the letter she wrote to the prosecutor after the trial; and Cox's testimony at the post-conviction hearing.

Based on this evidence, the state court reasonably determined that these women testified with the hope that the prosecutor would help them obtain a modification, but not pursuant to any specific agreement. Donnegan has not presented clear and convincing evidence to rebut the state court's factual determination, and accordingly, the finding that there was no agreement that needed to be disclosed

is binding on this court. *See Wisehart*, 408 F.3d at 324 ("[T]he Indiana Supreme Court found that in this case there had been no agreement, express or implied, and as the finding has not been rebutted by 'clear and convincing evidence,' it binds us."). In summary, Donnegan has failed to establish that the state court's resolution of his *Brady* claim was improper, and accordingly, claim one is denied.

B.    **Claim Two**

Next, Donnegan claims that his appellate counsel provided ineffective assistance. (DE 5 at 5; DE 16-3 at 14-20.) "The Sixth Amendment entitles criminal defendants to the 'effective assistance of counsel'——that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, —U.S.—, 130 S. Ct. 13, 16 (2009). The governing Supreme Court case for resolving an ineffective assistance claim is *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel under *Strickland*, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. The court's review of counsel's performance is "highly deferential," and the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004). The prejudice prong requires the petitioner to show that

14

"but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

A claim of ineffective assistance of appellate counsel is also subject to the *Strickland* analysis. *Howard v. Gramley*, 225 F.3d 784, 789-90 (7th Cir. 2000). To prevail on such a claim, the petitioner must show that appellate counsel's performance was "unreasonably deficient" and that this deficiency resulted in prejudice. *Id*. at 790. On the deficiency prong, the petitioner must show that counsel failed to present a "significant and obvious" issue on appeal. *Id.* However, counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Where appellate counsel has presented some arguments on appeal but not others, it will be difficult to demonstrate that counsel was incompetent. *Id*. On the prejudice prong, the petitioner must demonstrate that if the argument had been raised, "a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal." *Howard*, 225 F.3d at 790.

Here, Donnegan argues that appellate counsel was incompetent in failing to raise a *Blakely* claim on direct appeal. In *Blakely*, the U.S. Supreme Court held that under the Sixth Amendment, any fact that increases the penalty for a crime beyond the prescribed

statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. *Blakely*, 542 U.S. at 303-04. The Court defined the "statutory maximum" as the maximum sentence a judge could impose based solely on the facts reflected in a jury verdict or guilty plea. *Id.* *Blakely* was decided by the U.S. Supreme Court ten days after the Indiana Court of Appeals affirmed Donnegan's conviction, and two days after Donnegan's counsel filed a petition to transfer with the Indiana Supreme Court on his behalf. *Donnegan II*, 889 N.E.2d at 892. Donnegan believes that counsel was deficient in failing to seek leave to amend the petition to add a claim under *Blakely* challenging the 40-year enhanced sentence he received for his dealing in cocaine conviction.[2] (DE 5 at 6; DE 16-3 at 14-19.)

---

[2] Under Indiana law in effect at the time of Donnegan's sentencing, the sentencing range for a Class A felony was 20 to 50 years, with the "presumptive" sentence being 30 years. *Robertson v. State*, 871 N.E.2d 280, 283 (Ind. 2007). A sentence could be enhanced or reduced from the presumptive sentence based on aggravating or mitigating circumstances found by the trial judge. *Id.* In *Smylie v. State*, 823 N.E.2d 679 (Ind. 2005), decided after Donnegan's conviction became final, the Indiana Supreme Court held that this sentencing scheme violated the Sixth Amendment as interpreted by the U.S. Supreme Court in *Blakely*. The Indiana legislature responded by eliminating the requirement that the sentencing judge find aggravating circumstances before imposing a sentence greater than the presumptive sentence. *Robertson*, 871 N.E.2d at 283. As of April 25, 2005, Indiana's sentencing statutes were amended to replace "presumptive" sentences with "advisory" sentences, and to authorize the sentencing court in its discretion to impose any sentence within the statutory range. *Id.*

A review of the record undercuts Donnegan's claim that his appellate counsel provided him with ineffective assistance. The record shows that counsel filed a 62-page brief in the Indiana Court of Appeals, citing more than 50 cases and raising four substantive issues, including two that if successful would have resulted in reversal of all of Donnegan's convictions. (*See* DE 10-4.) Counsel's double jeopardy argument was persuasive enough to warrant the Indiana Court of Appeals to vacate two of Donnegan's convictions, resulting in a 14-year reduction in his 55-year sentence. *See Donnegan I*, 809 N.E.2d at 975-77. The Indiana Court of Appeals found merit to counsel's other arguments, including the prosecutorial misconduct claim, and concluded that the prosecutor had committed misconduct during closing argument, but ultimately determined that Donnegan was not prejudiced by the prosecutor's comments. *Id.* at 972-74. The court also found merit to counsel's argument that the trial court relied on inappropriate aggravating factors in imposing an enhanced sentence. *Id.* at 978-79. The court nevertheless concluded that a remand was not required because there was one aggravating factor——Donnegan's prior criminal record——which by itself provided a proper basis for an enhanced sentence. *Id.*

In the petition for transfer, counsel opted to raise only one argument: that the prosecutor committed misconduct during closing argument, warranting a mistrial. (DE 10-7.) If successful, this argument could have resulted in a reversal of all of Donnegan's

convictions and a remand for a new trial. (*See id.*) Based on the fact that the Indiana Court of Appeals found merit to the argument that the prosecutor had committed misconduct, and the result that could be achieved if this argument prevailed in the Indiana Supreme Court, counsel's strategy was not unreasonable. As the U.S. Supreme Court has recognized, counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith*, 528 U.S. at 288. That is what counsel did here.

Furthermore, at the time *Blakely* was decided, there was a long-standing rule in Indiana that an issue not raised at trial was waived on appeal, and Donnegan did not preserve any Sixth Amendment challenge to his sentence. *See Bruno v. State*, 774 N.E.2d 880, 883 (Ind. 2002). As it turned out, the Indiana Supreme Court later relaxed this rule with respect to *Blakely* claims. *See Smylie v. State*, 823 N.E.2d 679, 690 (Ind. 2005). However, counsel cannot be found incompetent for failing to predict or anticipate changes in the law. *See Valenzuela v. United States*, 261 F.3d 694, 700 (7th Cir. 2001) ("[T]he Sixth Amendment does not require counsel to forecast changes or advances in the law.").

Moreover, Donnegan has not established that had counsel raised a *Blakely* claim, the result of the appeal would have been different. The record reveals that Donnegan had a prior criminal record which could properly be used to increase his sentence even

after *Blakely*; his prior offenses alone supported the imposition of an enhanced sentence under state law. *See* Ind. Code § 35-38-1-7.1(a)(2) (listing criminal history as an aggravating factor); *McCarthy v. State*, 749 N.E.2d 528, 539 (Ind. 2001) (one aggravator is sufficient to support an enhanced sentence under Indiana law). Indeed, the Indiana Supreme Court later rejected a *Blakely* challenge based on similar facts, holding that there was no need to remand for resentencing notwithstanding a *Blakely* error, because the defendant had a prior criminal record which, by itself, supported the imposition of an enhanced sentence under state law. *See Robertson v. State,* 871 N.E.2d 280, 287 (Ind. 2007).

Based on the record, Donnegan has not established that counsel was incompetent in deciding what issues to raise on appeal, nor has he established that had counsel raised a *Blakely* claim, a reasonable probability exists that the result of the appeal would have been different. The state court's rejection of this claim was not unreasonable and, therefore, claim two is denied.

### C. Claim Three

Donnegan's final claim is that he was denied a fair trial based on two improper comments made by the prosecutor during closing arguments. (DE 5 at 7.) The governing U.S. Supreme Court case for resolving this claim is *Darden v. Wainright*, 477 U.S. 168 (1986), which established a two-prong test for determining whether a prosecutor's comments in closing argument constitute a denial of

due process. The court must first look to the challenged comments to determine whether they were improper. *See Ellison v. Acevedo*, 593 F.3d 625, 636 (7th Cir. 2010). If the comments were improper, the court must consider a number of factors to determine whether the defendant was prejudiced by the comments, including: "(1) whether the prosecutor misstated the evidence, (2) whether the remarks implicate specific rights of the accused, (3) whether the defense invited the response, (4) the trial court's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut." *Id.* (internal citation omitted). In determining whether the prosecutor's remarks were prejudicial, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned. The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181.

Here, Donnegan argues that the prosecutor denied him a fair trial when he referred to a state's witness having taken a polygraph examination, and when he referred to the defense as consisting of "smoke and mirrors." (DE 5 at 7.) With respect to the "smoke and mirrors" comment, the respondent argues that this claim is procedurally defaulted, and the court agrees. The record shows that Donnegan did not properly exhaust this claim by raising it in his petition to transfer filed with the Indiana Supreme Court. *See*

20

*Boerckel*, 526 U.S. at 845. Although Donnegan raised a prosecutorial misconduct claim based on the comment about the polygraph examination, he did not alert the Indiana Supreme Court to the facts surrounding the "smoke and mirrors" claim, and each ground of ineffective assistance is considered separate for exhaustion purposes. *See Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009). Donnegan does not provide any grounds for excusing this procedural default, and indeed, does not even address this claim in his traverse.[3] (*See* DE 16-3.) Accordingly, the court does not reach this claim on the merits.

Donnegan also claims that the prosecutor denied him a fair trial by broaching the subject of a state witness having taken a polygraph examination. In rejecting this claim on direct appeal, the Indiana Court of Appeals followed a two-step inquiry, and determined that the prosecutor's comment was improper but did not

---

[3] As a general matter, ineffective assistance of counsel may constitute cause for excusing a procedural default, but this principle is of no help to Donnegan. The exhaustion doctrine requires that an ineffective assistance claim be presented to the state court as an independent claim before it may be used to establish cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). If the ineffective assistance claim being used to excuse a procedural default was itself not properly exhausted in state court, "the petitioner will be fully defaulted." *Dellinger v. Bowen*, 301 F.3d 758, 766 (7th Cir. 2002). Donnegan did not exhaust a free-standing ineffective assistance claim based on appellate counsel's failure to raise an argument about the "smoke and mirrors" comment in the petition to transfer. Rather, his ineffective assistance claim focused on appellate counsel's failure to raise a *Blakely* claim in the petition.

prejudice Donnegan. *Donnegan I*, 809 N.E.2d at 972-73. This determination was not unreasonable.

As the state court observed, the record reveals that the issue of polygraph examinations was "weaved throughout the trial." *Id.* at 973. Specifically, the record shows that several of the state's cooperating witnesses had entered into plea agreements whereby they were required to submit to a polygraph examination. *Id.* at 972. At trial, defense counsel wanted to explore with these witnesses whether they complied with this provision. *Id.* Over the state's objection, the trial court permitted the defense to ask these witnesses whether they complied with the terms of their plea agreements, including whether they submitted to a polygraph examination. *Id.* However, the trial court ruled that it would not permit evidence pertaining to the results of any polygraph examinations that were taken. *Id.*

During trial, the defense asked two of the state's witnesses, Hill and Cox, whether they had taken polygraph examinations. *Id.* Both responded that they had not, claiming that they did not do so because they were pregnant at the time. (*See* Trial Tr. at 69, 96.) A third state's witness, Tammy Tarleton, also had a plea agreement containing this provision, but defense counsel only asked her about the existence of her plea agreement and did not inquire into whether she had taken a polygraph examination. *Donnegan I*, 809

N.E.2d at 973. In fact, Tarleton had taken a polygraph examination and failed. (DE 12, Appellant's Appx. at 599.)

At the close of the evidence, the jury submitted numerous questions to the court, including the following: "Was a polygraph done on any of the first four witnesses?" (DE 12, Trial Tr. at 324.) Tarleton was one of the first four witnesses for the state. (*See* DE 12, Trial Tr. at 45-116.) After consulting with the attorneys, the trial court responded that the evidence portion of the trial was completed, and that the attorneys would try to answer the jurors' questions during final arguments to the best of their ability, based on the evidence that had been presented. (DE 12, Trial Tr. at 334.)

During closing arguments, defense counsel commented that both Hill and Cox had violated the terms of their plea agreement by failing to submit to polygraph examinations; he later commented that Tarleton was dishonest. (DE 12, Trial Tr. at 367-71.) In rebuttal, the prosecutor stated:

> Tammy Tarleton gave . . . her first statement before she had any deal with the state whatsoever, right after she'd been arrested, before she had to give a cleanup and a polygraph and all that great stuff and she didn't give

a polygraph[4] but it doesn't matter, the statement she gave was spontaneous. . . .

(DE 12, Trial Tr. at 386.) At that point, defense counsel objected. In a sidebar, defense counsel requested a mistrial or alternatively requested that he be allowed to tell the jury that Tarleton had taken a polygraph and failed. (DE 12, Trial Tr. at 387.) The trial court sustained the objection but denied both defense requests, and admonished the jury that the results of polygraph examinations were not admissible. (DE 12, Trial Tr. at 395.) Thereafter, the prosecutor rephrased his argument, stating: "What you didn't hear was whether or not Tammy Tarleton took a polygraph examination. They made a specific point to bring that out on the other two but not on [her]." (DE 12, Trial Tr. at 396.)

The Indiana Court of Appeals determined that the prosecutor's comments were improper, since he made reference to evidence that was not in the record. *Donnegan I*, 809 N.E.2d at 973. However, the court determined that Donnegan was not prejudiced by this comment, since the issue of polygraphs had been raised by the defense throughout the trial, and the prosecutor immediately rephrased his

---

[4] The Indiana Court of Appeals noted that this appeared to be a transcription error, and that the prosecutor actually stated that Tarleton "did" take a polygraph. (DE 10-4 at 35.) It appears the transcription was inaccurate, because further discussions on the record indicate that the prosecutor intended to say——and defense counsel heard him to say——that Tarleton *did* take a polygraph. (*See* Trial Tr. at 387.) The Indiana Court of Appeals held that it did not matter which comment the prosecutor made, since either way he was improperly commenting on evidence outside the record. *Donnegan I*, 809 N.E.2d at 973.

argument to clarify that there was no evidence in the record regarding whether Tarleton had taken a polygraph examination. *Id.*

The court's analysis was not an unreasonable application of *Darden*. Although the prosecutor misstated the evidence, his remark was very brief and did not implicate specific rights of the accused. Further, he rephrased his remark moments later, correctly stating that there was no evidence in the record regarding whether Tarleton had taken a polygraph examination. Although the defense did not invite the particular comment made by the prosecutor, it was the defense that opened the door to the entire topic of the polygraph examinations, which otherwise would have been off-limits. *Williams v. State*, 755 N.E.2d 1128, 1132 (Ind. App. Ct. 2001). Additionally, there was overwhelming evidence presented at trial regarding Donnegan's extensive drug-dealing, including the physical evidence found in the apartment Donnegan shared with Hill and the testimony of multiple cooperating state witnesses.(*See* DE 12, Trial Tr. at 45-302.) Finally, the trial court twice instructed the jury that the arguments of counsel are not evidence. (DE 12, Appellant's Appx. at 49, 69.)

In summary, although the prosecutor's reference to the polygraph examination may have been "undesirable," Donnegan has not established that this comment so infected the trial as to constitute a denial of due process. The state court's rejection of

this claim was not unreasonable, and accordingly, claim three is denied.

### D. Certificate of Appealablity

As a final matter, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons explained above, Donnegan has failed to make a substantial showing of the denial of a constitutional right. There is nothing before the Court to indicate that reasonable jurists could debate the outcome of this petition or that there is a reason to encourage Donnegan to proceed further. Accordingly, the court will not issue a certificate of appealability.

CONCLUSION

For the reasons set forth above, the Court:

(1) **GRANTS** the petitioner's motion for leave to file his traverse instanter (DE# 16);

(2) **DENIES** the amended habeas corpus petition (DE# 5); and

(3) **DENIES** a certificate of appealability.


**DATED:** August 3, 2010          /s/RUDY LOZANO, Judge
                                       United States District Court